## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

Peter Somers and Peter Schalken,

     Plaintiffs,

          v.

Computershare Trust Company, N.A., Computershare Inc., Computershare, Inc., Computershare Investor Services, LLC, and 374Water Inc.,

     Defendants.

Civ. A. No. 23-cv-00969 (RGA)

**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Peter Somers and Peter Schalken file this amended Complaint against the captioned defendants to recover the value of shares of stock that were wrongfully escheated by defendants Computershare Trust Company, N.A., Computershare Inc., Computershare, Inc., Computershare Investor Services, LLC, and 374Water Inc. (the "Corporate Defendants") to the state of Delaware.

The Plaintiffs make the following allegations as to knowledge as they pertain to themselves, on information and belief as to all other matters, and in the alternative to the extent necessary.

## I.      THE PARTIES

1.      Plaintiff Peter Somers is a citizen of the Netherlands and a full-time resident of Portugal. He has at all relevant times maintained an address at Top Naefflaow 75, 9721UE Groningen.

2.      Plaintiff Peter Schalken is a citizen and full-time resident of the Netherlands.

3.      Defendant Computershare Trust Company, N.A. is a trust company formed under the laws of the United States. It is a citizen of the Commonwealth of Massachusetts.

4.      Defendant Computershare, Inc., is a corporation formed pursuant to the laws of Delaware.

5.      Defendant Computershare Inc., is a corporation formed pursuant to the laws of Delaware.

6.      Defendant Computershare Investor Services, LLC, is a limited liability corporation formed pursuant to the laws of Delaware.

7.      As set forth in this complaint, "Computershare" refers to Computershare Inc., Computershare, Inc., Computershare Investor Services, LLC, and Computershare Trust Company, N.A. Each reference to "Computershare" in this complaint should be taken as a pleading that each of these entities in the alternative, and/or one or more of these entities in combination, engaged in the acts described.

8.     Defendant 374Water Inc. is a corporation formed pursuant to the laws of Delaware.

## II.     JURISDICTION & VENUE

9.     This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the parties to this action are citizens of different states and countries and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.     This Court also has federal subject matter jurisdiction over this matter based on the federal questions raised by Plaintiffs' federal law claims.

11.     Personal jurisdiction over defendants Computershare Inc., Computershare, Inc., Computershare Investor Services, LLC exists because each is a Delaware corporation existing under its laws. This Court further has jurisdiction over all the Defendants because they caused a tortious injury to the Plaintiffs by an act or omission, to wit, the triggering of the reporting obligations related to the shares at issue, resulting in the unlawful cancellation and transfer of the shares to the State of Delaware via the escheatment process.

12.     The United States District Court for the District of Delaware is the proper venue for this matter pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this action occurred within this judicial district.

### III.   FACTS

13.   The Plaintiffs are Dutch angel investors focusing on environmentally conscious engineering companies. After learning about its Dutch expansion plans, the Plaintiffs met with Richard Davis, the CEO of PowerVerde and a personal friend of Somers, who solicited their investment. On January 1, 2012, the Plaintiffs invested in PowerVerde. Four years later, PowerVerde, acting in concert with Computershare, escheated the Plaintiffs shares to the state of Delaware without any notice and despite the fact that neither the Plaintiffs nor their shares were missing. As a result, the Plaintiffs lost $875,000.00.

A.   *PowerVerde's Structure*

14.   When PowerVerde, Inc. became a Vyrex, Inc. subsidiary in 2008, the combined company took the PowerVerde, Inc., name. A subsequent merger led PowerVerde Inc. to rename itself 374Water Inc. This company, 374Water Inc., f/ka/ PowerVerde, Inc., f/k/a Vyrex, Inc., is referred to in this Complaint as "PowerVerde."

B.   *PowerVerde's Background*

15.   Powerverde was formed to develop, commercialize and market a series of unique electric generating power systems designed to produce electrical power with zero emissions or waste byproducts, based on a patented pressure-driven motor and related organic pressure-driven cycle components.

16.     The design of the motor was conceived in January 2001. An initial prototype of the motor was created and tested in early 2002, and a redesign was developed in early 2007.

17.     The 2007 prototype was tested extensively, and by 2012, PowerVerde had manufactured three 25/50kW motors as well as additional next generation motors that it had been testing on a more powerful and advanced organic pressure-driven cycle referred to as the Liberator.

18.     In January 2011, PowerVerde entered into a Binding Letter of Intent for European Distribution (the "BLOI") with Newton Investments BV, a Dutch corporation based in Leeuwarden, Netherlands ("Newton"). Pursuant to the BLOI, Newton purchased one Liberator system for a discounted price of $130,000, which was delivered in July 2011.

19.     In September 2011, PowerVerde entered into a definitive License Agreement with Newton as contemplated by the BLOI. Under the Agreement, Newton would be, for a period of 10 years, be the exclusive manufacturer and distributor of the PowerVerde's 20/50kW system in the European Union under a strict licensing agreement with a Dutch foundry and machine shop, Autonational BV, based in Ijlst, Netherlands.

20.     As PowerVerde noted in its 2012 10-K, "Of the 27 European Union nations, we are initially focusing on the Netherlands, Belgium, Germany and the Scandinavian countries." This geographic focus brought them to the attention of the Plaintiffs.

C.     *The Plaintiffs Invest in PowerVerde*

21.     The Plaintiffs, Dutch investors, learned of the company's groundbreaking technology and that the company was coming to the Netherlands.

22.     After multiple conversations with PowerVerde's then-CEO, Richard Davis, both Plaintiffs purchased shares of PowerVerde on January 1, 2012. Plaintiff Somers purchased 125,000 shares of PowerVerde common stock, each for $1.00/share. Plaintiff Schalken purchased 50,000.00 shares of PowerVerde common stock, also for $1.00/share.

23.     When they purchased their shares, they received an email from Davis thanking them for their purchase, inviting them to discuss the business and implementation – and giving his personal telephone and email address.

24.     The Plaintiffs also received the physical certificates evidencing their PowerVerde share purchases, something that they required because PowerVerde was, at that time, a penny stock company trading on an over-the-counter bulletin board, making it all but impossible to hold shares in a brokerage account.

25.     Each Plaintiff has had possession of their stock certificate from the day they received it through today.

D.     *After Investing, the Plaintiffs Stay Abreast of PowerVerde's Activities*

26.     The Plaintiffs stayed abreast of PowerVerde's activities after they invested, and offered to introduce management to potential investors and partners.

27.     Plaintiff Somers was especially involved. He has a thirteen-year professional relationship with Davis, who remained PowerVerde's CEO until April 16, 2021, and he had multiple conversations as a shareholder with Davis about PowerVerde's business prospects and ways that Somers could help prompt adoption of its products in Europe.

28.     Davis, for his part, was responsive to Somers and routinely responded to his calls and emails from 2012 onward.

E.     *All Parties Discover the Escheat*

29.     Apparently, the Plaintiffs' shares were escheated to the state of Delaware on March 31, 2016 – just over four years after the Plaintiffs purchased them – and while the parties remained in contact.

30.     That said, no Defendant informed either Plaintiff.

31.     Neither Plaintiff received any communication suggesting that an escheatment was going to occur, was imminent or – for that matter – had occurred.

32.     They only found out that they weren't shareholders because Somers received an email from PowerVerde in May of 2021 offering to digitize his (actually non-existent) shares in the company.

33.     In response to the email, Somers wrote to Davis on May 19, 2021, asking for assistance with "exchang[ing] the enclosed cert[ificate] for [a] book entry . . . so we can trade them digitally." The certificate he referred to is his PowerVerde share certificate for the 125,000 shares that are the subject of this suit.

34.     Davis responded a day later, writing on May 20, 2021, not by saying that the shares were escheated but by saying, "I can offer the legal option to remove [the] legend. You must contact Computershare, our transfer agent, and request conversion to book entry status." Davis never mentioned the escheat and acted as though Somers owned the shares in question.

35.     Somers responded, asking for the relevant email address. Nine days later, Davis provided the contact information for June Lutes, a relationship manager with Computershare.

36.     On June 5, 2021, Somers wrote to Lutes, asking for her help with the "digitization of PowerVerde shares [he] bought in 2012." In turn, Lutes demanded Somers supply his original share certificate so that the shares could be digitized – again, something that could not happen if the shares were escheated.

37.     Then, out of the blue, on July 7, 2021, Lutes wrote, "I just logged into our system to check your account and realized that Computershare no longer holds your shares, they have been escheated to the State of Delaware in 2016!" *In short, until July 7, 2021, neither Somers nor the Defendants realized his shares had been escheated.*

38.     Abiding by Lute's direction, Plaintiff Somers contacted the Office of Unclaimed Property of the Delaware Department of Finance (the "OUP").

39.     The OUP, through its claims personnel, stated that Somer's shares had escheated on March 31, 2016, and were sold on April 24, 2017.

40.     According to the OUP's November 16, 2021 email to Somers, notice had been sent to him to the address provided by Computershare.

41.     The address, "Top Naefflaan 75, Groningen, 9721VE," omitted any country code. Worse, the actual street is "Naefflaow" and address is "9721UE," as set forth on his stock certificate. In other words, the notice was incorrectly addressed based on faulty information supplied by Computershare or alternatively, input by the state of Delaware.

42.     It is anyone's guess where it ended up, but it was never delivered to Somers. In fact, Somers never received any notice that his shares were escheated – not from the Delaware Defendants and not from the Corporate Defendants.

43.     Plaintiff Schalken, who largely relied on Somers for his information about PowerVerde, learned what happened to Somer's shares and sought corresponding information about his shares. It was then that he learned that his shares, too, had been escheated contemporaneously with Somer's shares. Schalken too received no notice of the escheatment from any defendant in this action, or any notice at all for that matter.

F.    *Escheat Mechanics*

44.     PowerVerde was, at all relevant times, required by law and its bylaws to keep an accurate record of its shareholders, so as to properly reflect the ownership of its outstanding shares.

45.     Abandoned property is property held by a third party after the dormancy period has run. Delaware law requires companies holding abandoned property to escheat it to the State if certain prerequisites are met, chiefly, the running of the applicable statutory dormancy period. In this case, the dormancy period is three years, a period that begins to run once "an owner has ceased, failed, or neglected to exercise dominion or control over property or assert a right of ownership or possession or . . . do any other act in relation to or concerning such property."

46.     Holders of abandoned property were, at all relevant times, required to make reasonable efforts to locate the property's owners before escheating.

47.     At all relevant times, Computershare acted as PowerVerde's transfer agent. As a transfer agent, Computershare offered services related to the escheatment of PowerVerde shares, including without limitation, locating purported lost shareholders communication with shareholders to prevent escheatment, determinations about which shares must be escheated and the actual escheatment of those shares to the State of Delaware. Computershare was also responsible for registering transfers of securities. and the records and accounts of the Plaintiffs shares PowerVerde were accordingly maintained by Computershare.

48.     Computershare was aware of PowerVerde's (and by extension its) duty to make an effort to locate the owners of the property it planned to escheat. It states on its website (available at https://www-us.computershare.com/content/download.asp?docId=%7BFFD8EC48-FF06-4700-9176-D42E34B17A84%7D): "State law requires all companies to perform due diligence searches to locate holders at risk of escheatment before declaring their property to be abandoned."

49.     Computershare did not perform a due diligence search to locate or communicate with Plaintiffs before declaring their property to be abandoned, in violation of state and federal law, including 17 C.F.R. § 240.17Ad-17 and the requirements set forth by the state of Delaware's handbook for escheatment.

50.     Frankly, the fact that they could not find Somers and Schalken speaks for itself. The universe of PowerVerde shareholders was not, at that time, particularly broad – most were insiders and the balance were largely early round investors. Moreover, neither Plaintiff had moved, changed emails or even changed their telephone numbers. It is inconceivable that they could not be located, especially when Somers is in contact with the CEO about his shares – shares CEO Davis personally acknowledged as late as 2021 – and the company's prospects. Moreover, Davis was a personal friend of Somers and could have contacted him with ease. Had Computershare or PowerVerde done even a modicum of diligence, they would have found the Plaintiffs right where they were supposed to be.

51.     Rather than conduct the minimal diligence it would have taken to "find" the Plaintiff Somers – who incidentally was not lost – Computershare did none and did not make any attempt to contact Somers. Instead, acting as the agent of PowerVerde, Computershare erroneously reported to the State of Delaware that his 125,000 shares had been "abandoned" and constituted "unclaimed property." Computershare, acting as an agent of PowerVerde, then delivered these shares to the state of Delaware on March 31, 2016. That is, they escheated the shares to Delaware.

52.     Again, rather than conducting the minimal diligence it would have taken to "find" the Plaintiff Schalken, Computershare did none and did not make any

attempt to contact Schalken. Instead, acting as the agent of PowerVerde, Computershare erroneously reported to the State of Delaware that his 50,000 shares had been "abandoned" and constituted "unclaimed property." Computershare, acting as an agent of PowerVerde, then delivered these shares to the state of Delaware on March 31, 2016. That is, they escheated the shares to Delaware.

53.     Neither Plaintiff had any reason to believe that their shares would be escheated without notice. Moreover, the Defendants had the cancellation and escheatment information, the Plaintiffs did not.

54.     The Defendant's failure to "reunite" the "abandoned" shares, which Somers and Schalken still held, was unreasonable given the circumstances. Moreover, the escheat of the Plaintiffs' shares was wrongful.

55.     Given as much, the three year dormancy period required by Delaware's Escheatment Statute had not lapsed. In reality, the dormancy period had never run; the escheatment was premature.

56.     The Defendant's actions given as much, were grossly negligent and conducted with bad faith, ill-will, malice, recklessness, wantonness, oppression, insult, willful, conscious disregard of the plaintiffs rights and/or a foreseeable result, and/or in bad faith.

*F.* *Damages*

57. Despite his $125,000.00 investment, Somer's escheated shares yielded only $974.84 when they were sold by the state of Delaware.

58. Despite his $50,000.00 investment, Schalken's escheated shares yielded only $ 389.94 when they were sold by the State of Delaware.

59. By way of the escheat, the Plaintiffs were deprived of the opportunity to sell their shares when PowerVerde's share price exceeded $5.00/share. Had they owned the shares, the Plaintiffs would have sold the shares at that time. In total, Plaintiffs would have realized $875,000.00 had they sold, Somers $625,000.00 and Schalken $250,000.00.

## Count I: Negligence

## (Against All Defendants)

60. Plaintiffs incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

61. The Defendants owed duties to Plaintiffs to, among other things, account properly for the status of Plaintiffs' shares, exercise due care and diligence in exercising control over the disposition of Plaintiffs' shares, and manage and handle Plaintiffs' shares in a manner that complied fully with federal and state law.

62. Delaware does not require or permit the escheat of securities where the last known address of the owner is within a foreign country, as is the case with the

Plaintiffs. Moreover, Delaware required the escheatment of securities, if at all, only when the property had been fully dormant for a period of at least three (3) years, something that did not occur.

63.     The Defendants breached their duties to Plaintiffs by wrongfully escheating Plaintiffs' shares to the State of Delaware, given that a) such escheat was not required due to the Plaintiffs' foreign addresses, b) by failing to comply with Delaware's due diligence requirements, c) by escheating without making reasonable efforts to determine if either Plaintiff was lost or to reunite the abandoned property with such Plaintiff, d) by reporting the Plaintiffs' shares as unclaimed property before the expiration of the period of dormancy required by Delaware, e) by failing to disclose to the Plaintiffs that they believed that their shares could be potentially escheated to the state of Delaware in the absence of specified action by the Plaintiffs, f) by making the wrongful and negligent determination that the three-year dormancy period had lapsed despite the fact that the Plaintiffs had indicated their interest in the investments throughout the four years from investment to escheatment, thereby exercising dominion and control over the property and restarting the dormancy period, g) by failing to provide sufficient information to Delaware, including Plaintiffs' contact information, to enable Delaware to return Plaintiffs' shares to them, and h) by failing to notify the Plaintiffs that their shares were escheated. In

addition, PowerVerde was negligent in selecting, supervising, or otherwise controlling its agent, Computershare.

64.    As a result of the Corporate Defendants' actions, Plaintiffs have been damaged in the amount set forth herein.

65.    In addition, the nature of the conduct merits an award of punitive damages.

## Count II: Conversion

### (Against All Defendants)

66.    Plaintiffs incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

67.    Each Plaintiff owned shares in PowerVerde as set forth herein.

68.    Delaware law provides that conversion is the act of wrongfully asserting dominion over the property of another, in denial of his or her right to the property or in a way that is inconsistent with their rights. A stockholder's shares are converted by any act of control or dominion without the stockholder's consent or authority that is in disregard, or denies, his or her rights as a stockholder of the company in question.

69.    Computershare and PowerVerde wrongfully escheated their shares to the State of Delaware.

70.     In wrongfully escheating the shares, Computershare and PowerVerde exercised ownership, control, and/or dominion over Plaintiffs' property, to which they had no right of possession, thereby depriving Plaintiffs of their valuable property.

71.     As a result of the Corporate Defendants actions, Plaintiffs have been damaged in the amount set forth herein.

72.     In addition, the nature of the conduct merits an award of punitive damages.

## Count III: Breach of Contract
## (Against All Defendants)

73.     Plaintiffs incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

74.     PowerVerde is required to comply with any escheat or unclaimed property laws that apply to abandoned or unclaimed securities that it issues. Under such laws, PowerVerde has a duty to communicate periodically with its shareholders to prevent their shares from being escheated.

75.     On information and belief, PowerVerde contracted with Computershare to provide transfer agent services, including services related to the escheatment of PowerVerde's abandoned or unclaimed securities. These services included, without limitation, services to locate lost shareholders, to communicate with shareholders to

prevent escheatment, and to determine whether PowerVerde shares constituted unclaimed property, pursuant to state and federal law, including 17 C.F.R. § 240.17Ad-17.

76.     The shareholders of PowerVerde, including Plaintiffs, were and are the intended third-party beneficiaries of the contract, including any indemnity provisions set forth therein.

77.     By Computershare's acts and omissions set forth herein, including but not limited to its wrongful escheatment of Plaintiffs' shares to the State of Delaware, where PowerVerde knew or should have known that Plaintiffs had not abandoned their shares, since Plaintiffs or their principals had regular contract with PowerVerde, Defendants knew how to find and contact Plaintiffs, Plaintiffs were key participants in PowerVerde's business, and its failure to provide notice of such escheatment to Plaintiffs, Computershare breached its duties under the contract with PowerVerde.

78.     Computershare also breached its duties by failing to inquire with PowerVerde regarding Plaintiffs' contacts and relationship with PowerVerde and other facts that would be relevant to determining whether Plaintiffs had abandoned their shares.

79.     PowerVerde also breached its duties by failing to inform Computershare of Plaintiffs' contacts and relationship and other such relevant facts.

80.     As a result of Computershare's and PowerVerde's actions, Plaintiffs have been damaged in the amount set forth herein.

## Count IV: Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against All Defendants)

81.     Plaintiffs incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

82.     On information and belief, PowerVerde contracted with Computershare to provide transfer agent services, including services related to the escheatment of abandoned or unclaimed securities.

83.     By wrongfully escheating Plaintiffs' shares, where Defendants knew or should have known that Plaintiffs had not abandoned their shares, Defendants knew how to find and contact Plaintiffs, and failing to notify Plaintiffs of the potential or actual escheat of their shares, and for other reasons set forth herein, Computershare and PowerVerde breached the implied covenant of good faith and fair dealing, resulting in harm to Plaintiffs.

84.     Computershare also breached the implied covenant of good faith and fair dealing by failing to inquire with PowerVerde regarding Plaintiffs' contacts and relationship with PowerVerde and other facts that would be relevant to determining whether Plaintiffs had abandoned their shares.

85.     By engaging in the actions and inactions set forth above, both Computershare and PowerVerde took steps to deprive Plaintiffs of the fruits of the contract, and unfairly interfered with the rights of Plaintiffs, the third-party beneficiaries, to receive the benefits of the contract.

86.     As a result of Computershare's and PowerVerde's actions, Plaintiffs have been damaged in the amount set forth herein.

## Count V: Breach of Fiduciary Duty
## (Against All PowerVerde)

87.     Plaintiffs incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

88.     PowerVerde and its officers or directors had fiduciary duties to Plaintiffs to, among other things, safeguard and protect Plaintiffs' shares, maintain accurate books and records regarding Plaintiffs' ownership of shares, not make untrue statements of material facts or conceal material facts, or engage in any practice or course of business that would operate as a deceit.

89.     PowerVerde and its officers and directors breached those duties by, among other things, (a) erroneously determining that shares owned by Plaintiffs were abandoned and thus escheatable; (b) wrongfully escheating Plaintiffs' shares in violation of law; (c) failing to notify Plaintiffs of such escheat; (d) failing to maintain accurate books and records regarding Plaintiffs' ownership of shares; (e)

failing to convey such information to Computershare, its transfer agent; and (f) failing to make disclosures to Plaintiffs of material facts.

90.    PowerVerde knew or should have known that Plaintiffs had not abandoned their shares for a number of reasons, including that Plaintiffs or their principals had regular contact with PowerVerde, and PowerVerde knew how to find and contact Plaintiffs.

91.    PowerVerde and its officers also stood to gain from the escheat and liquidation of Plaintiffs' shares, as they knew or were in a position to have non-public information concerning PowerVerde's business.

92.    As a result of Computershare's and PowerVerde's actions, Plaintiffs have been damaged in the amount set forth herein.

## Count VI: Violations of State Securities Laws
### (Against All Defendants)

93.    Plaintiffs incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

94.    Computershare and PowerVerde have a statutory duty under the Delaware Uniform Commercial Code, Article 8 of Section 1 of Title 6 of the Delaware Code, to ensure that securities are not wrongly transferred from one person to another.

95.   Computershare and PowerVerde are expressly liable for violations of these duties under Article 8 of Section 1 of Title 6 of the Delaware Code.

96.   Computershare and PowerVerde violated their statutory duty by wrongfully escheating Plaintiffs' shares to Delaware.

97.   As a result of Computershare's and PowerVerde's statutory violations, Plaintiffs have been damaged in an amount not less than $562,500.00.

## Count IX: Violations of 42 U.S.C. § 1983

### (Against All Defendants)

98.   Plaintiffs incorporate by reference all the foregoing paragraphs above as though fully set forth herein.

99.   Plaintiffs were the rightful owners of PowerVerde shares escheated by Computershare and PowerVerde to Delaware. Plaintiffs had a property interest in the shares escheated to Delaware.

100.   Computershare and PowerVerde claim to have escheated Plaintiffs' shares pursuant to the Delaware Escheats Law.

101.   The escheat of unclaimed property is an exercise of the state's sovereign authority and, as such, is an exclusively public function.

102.   To the extent that Delaware law requires escheat of Plaintiffs' shares, Delaware was directly involved in, and was responsible for, the actions taken by Computershare and PowerVerde in not only purportedly encouraging and requiring

the escheat of Plaintiffs' shares under the Delaware Escheats Law, but also validating the escheat of Plaintiffs' shares by receiving and subsequently liquidating Plaintiffs' shares.

103.   In escheating Plaintiffs' shares, Computershare and PowerVerde acted in close nexus with Delaware and had a symbiotic and intertwined relationship with Delaware, as Delaware's ability to escheat the shares was necessarily dependent on, and required, Computershare's and PowerVerde's actions. Delaware,

104.   Computershare and PowerVerde thus jointly participated in the escheat of the shares.

105.   Computershare's and PowerVerde's actions in escheating Plaintiffs' shares constituted an integral part of Delaware's escheat system without which Delaware's escheat system could not function.

106.   Delaware encouraged and coerced Computershare's and PowerVerde's conduct by subjecting Computershare and PowerVerde to penalties for any failures to comply with the Delaware Escheats Law. As such, any provisions of the Delaware Escheats Law, or any other guidance released by Delaware that purports to require the escheat of Plaintiffs' shares constitutes an affirmative command by Delaware for Computershare and PowerVerde to escheat Plaintiffs' shares.

107.   Thus, Computershare and PowerVerde acted under the color of law when they escheated Plaintiffs' shares to Delaware.

108.   In escheating Plaintiffs' shares to Delaware, particularly without notice of the escheat or of any change in the Delaware Escheats Law that would purportedly result in the automatic escheat of Plaintiffs' shares, Computershare and PowerVerde, acting under color of law, effected a deprivation and taking of Plaintiffs' property without due process of law as required under the Fourteenth Amendment to the United States Constitution.

109.   In escheating Plaintiffs' shares to Delaware without prompt payment of just compensation, Computershare and PowerVerde, acting under color of law, also violated the Netherlands Friendship, Commerce, and Navigation Treaty (the "Treaty") between the United States and the Netherlands. The Treaty, which was effective as of December 5, 1957, is a self-executing treaty. The Treaty provides Plaintiffs with an absolute protected private right to not be expropriated of their shares (or other property) except for public benefit with the prompt payment of just compensation, which must be made no later than the time of the taking.

110.   Under federal common law rules created by the United States Supreme Court for determining when states have the right and jurisdiction to escheat unclaimed intangible property, the State of Delaware had no right or jurisdiction to escheat Plaintiffs' shares because Plaintiffs' shares were owned by foreign persons.

Courts have held that states may not escheat unclaimed property in a manner contrary to these rules. Accordingly, under these federal common law rules, Plaintiffs—citizens of the Netherlands—have a federally protected right that their shares may not be escheated by any state, including Delaware.

111.   Similarly, under the Commerce Clause of the United States Constitution, Plaintiffs have a federally protected right to expect that their shares would be regulated by Congress, if at all, rather than by any individual state. As a result, Plaintiffs have a federally protected right to expect that their shares would not be subject to escheat by any state, including Delaware.

112.   Delaware also did not have the right to escheat Plaintiffs' shares because, among other reasons, Plaintiffs had not abandoned their shares, Plaintiffs at all relevant times had physical possession of their shares and still have physical possession of the shares, Computershare and PowerVerde knew how to find and contact Plaintiffs, and Plaintiffs had affirmative contact with PowerVerde regarding their shares, including in the three years prior to the date of escheatment.

113.   Computershare's and PowerVerde's conduct caused Plaintiffs to sustain substantial damages in at least the combined amount of $562,500.00.

**Prayer For Relief**

WHEREFORE, Plaintiffs request the following relief:

A.      Award Plaintiffs damages, punitive damages, costs, attorney's fees, and pre-judgment and post- judgment interest, as permitted by applicable law;

B.      Award Plaintiffs the costs and disbursement of this action including reasonable attorney's fees and costs; and

C.      Award Plaintiffs such other and further relief as the Court may deem just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

JANUARY 11, 2024

/s/ Mark M. Billion_____
Mark M. Billion #5263
Peter K. Schaeffer
BILLION LAW
1073 S. Governors Ave.
Dover, DE 19904
Tel: 302.428.9400
Email: markbillion@billionlaw.com